GEORGE HIMES *against* GEORGE JACOBS, ROBERT HUS-TON, GEORGE CRONISTER and ANTHONY DEAR-DORFF.

IN ERROR.

Where suit is brought against the personal representatives of a deceased debtor, with notice to the tenants in possession of the land upon which the debt is alleged to be a lien, and the tenants appear, and make defence, they are concluded by the verdict and judgment; although they may not, *in fact* have put in issue the question of lien; and in an ejectment brought by a sheriff's vendee under that judgment against such terre-tenants, they will not be permitted to contravert the lien of such debt.

It is a rule of pleading that whatever is not contested, at the proper time, is conceded.

In Pennsylvania, where lands are assets for the payment of debts; it is most just to afford the terre-tenant, who is the party to be affected, an opportunity to contest the debt—and the plaintiff may do so.

Even where the terre-tenants have been called upon prematurely, still, if they avail themselves of the occasion, and have a fair opportunity to make a full defence, they are concluded.

WRIT of error to the court of common pleas of Adams county.

The case was an action of ejectment, brought by the plaintiff in error, who was plaintiff below, to recover a tract of land; and both plaintiff and defendant made title under *John Ross*, deceased, in whom it was admitted it was originally vested.

The plaintiff claimed by virtue of a sheriff's deed, which was made to him upon a judgment obtained at the suit of *Isaac Boyers* and *Abraham Boyers*, against *Sample Ross* and *Samuel Ross*, executors of *John Ross*, deceased, with notice to the tenants in possession.

The proceedings in that suit were material to his title, and so far as they are so, are here given at length.

*Docket entry.*

| Isaac Boyer, and Abraham Boyer, | No. 135, April term, 1823. |
| *v.* | Summons debt £1510 05. |
| *Sample Ross* and *Samuel Ross*, executors of the testament and last will of *John Ross*, deceased, with notice to *Anthony Deardorff*, *David Ross*, and others, tenants in possession of the real estate of said *John Ross*, deceased. | Sheriff Gilbert returns served on *Anthony Deardorff*, *David Ross*, &c. Narr. filed. *Defendant* pleads payment, with leave, &c. Replication *non solvit*. Issue, &c. |

*Stevens* and *Sweney*, for plaintiffs. *M'Conoughy*, for terre-tenants.

April 28th, 1826, *Samuel Ross*, one of the *defendants*, agrees that judgment be entered against the *executors* and *devisees* in this suit. JUDGMENT according to agreement.

(George Himes *v.* George Jacobs, Robert Huston, George Cronister and Anthony Deardorff.)

And now, 28th August, 1826, verdict for the plaintiff for fifteen hundred and ten pounds and five shillings, to be released on payment of three hundred and seventy-one dollars and fifty-four cents.—JUDGMENT.

Declaration, filed April term, 1823.

ADAMS COUNTY, ss.—*Sample Ross* and *Samuel Ross*, both late of the county aforesaid, yeomen, executors of the last will and testament of *John Ross*, late of the county aforesaid deceased, were summoned to answer *Abraham Boyer* and *Isaac Boyer* of a plea that they render to them the sum of one thousand five hundred and ten pounds five shillings, equal to four thousand and twenty-seven dollars and thirty-three cents, lawful money of Pennsylvania, which to them they owe and unjustly detain, &c.

And whereupon, the said *Abraham* and *Isaac*, by *George Sweney*, their attorney, complain that, whereas the said *John Ross*, in his life time, that is to say, on the fifteenth day of June, in the year of our Lord one thousand seven hundred and ninety, by his certain writing obligatory, to the court here shown, acknowledged himself to be bound unto the said *Abraham* and *Isaac*, in the aforesaid sum of one thousand five hundred and ten pounds, five shillings, to be paid to the said *Abraham* and *Isaac*, when he the said *John* should be thereunto afterwards requested; and whereas the said *John*, at and immediately before the signing and sealing of the aforesaid writing obligatory, was seized in his demesne as of fee, of and in a certain tract of land, situate in Franklin township, in the then county of York, now Adams, and state of Pennsylvania, adjoining lands of *William Shakely* and *Robert Shakely*, the heirs of *Samuel Russell*, deceased, the heirs of *Moses Jenkins*, deceased, and others. And whereas the said *John*, afterwards, to wit, on the sixth day of January, in the year of our Lord one thousand eight hundred and five, made his last will and testament in writing, and constituted the said *Sample Ross* and *Samuel Ross*, the executors thereof; which said last will and testament was duly proved and recorded, according to law; by which said last will and testament, the said *John Ross* devised the tract of land aforesaid to the said *Sample Ross* and *Samuel Ross*, to be sold, and the proceeds thereof *to be applied to the payment of his debts*, and certain legacies in the said will and testament specified, and died seized thereof—which said tract of land was not sold by the said *Sample Ross* and *Samuel Ross*, agreeably to the provisions of the said last will and testament, but still remains subject to the lien of the debts of the said *John Ross;* and subject to the payment of the said sum of one thousand five hundred and ten pounds five shillings, mentioned in the aforesaid writing obligatory, to the said *Abraham Boyer* and *Isaac Boyer.* Nevertheless, the said *John Ross*, in his life time, and the said *Sample Ross* and *Samuel Ross*, since the death of the said *John Ross*,

(George Himes, *v.* George Jacobs, Robert Huston, George Cronister and Anthony Deardorff.)

although often requested, have not paid the aforesaid sum of one thousand five hundred and ten pounds, five shillings, to the said *Abraham Boyer* and *Isaac Boyer*, but have hitherto refused, and still do refuse, to pay the same to them; to the damage of the said *Abraham Boyer* and *Isaac Boyer*, five thousand dollars, and there-fore they bring this suit, &c.

Upon the judgment so obtained, in this action, the land in ques-tion was levied and sold to the plaintiff; and on the 26th May, 1827, a sheriff's deed was made to him.

The defendant, *Anthony Deardorff*, claimed title under a judg-ment obtained at the suit of *Tobias Kepner*, guardian of *Bittinger*, against *Samuel Ross*, and another, on the 10th of April, 1820, upon which the land was sold, on the 25th of November, 1822, to the defendant; and on the 16th January, 1823, a sheriff's deed was made to him.

*Samuel Ross* was one of the five sons and daughters of *John Ross*, deceased, and one of the executors named in his will.

In the will of *John Ross*, *which was proved on the 6th April,* 1805, he directed that his real estate, of which the land in dispute was a part, should be sold by his executors, *that they should pay his debts,* and distribute the residue of the proceeds among his children equally.

On the 26th of February, 1813, *William Baxter*, who was mar-ried to a daughter of *John Ross*, deceased, and his wife, and *John Ross*, the son, released to *Samuel Ross* their respective interests under the will.

In the same year, *David Ross* and *Samuel* made a division of the land which had been of *John Ross;* and *David* agreed to take the portion divided off to him, on account of his interest under his father's will. After the divison, which was by parole and *in pais,* *David* built a tenant house, on his part, and enjoyed it separately.

To show that the interest of *Sample Ross*, the remaining legatee, under the will of *John Ross*, had been also vested in *Samuel Ross*, the defendant gave in evidence a judgment which had been ob-tained against *Sample Ross*, on the 15th August, 1808, at the suit of *W. Hosack*, administrator of *Brown;* and a levy, and judicial sale of the interest of *Sample* in the land of his father, to *Samuel Ross;* and a sheriff's deed of the same to *Samuel*, dated the 3d day of October, 1809. *Samuel* had improved the land, and the houses built upon it; and expended considerable sums of money in these improvements, after he obtained the releases of his brothers and sisters.

In answer to points put by the counsel of the plaintiff, the court below charged the jury—that by the act of the 4th, April, 1797, no debt, unless secured by mortgage, judgment, recognizance, or other record, shall remain a lien on the lands of decedents for a

(George Himes, *v.* George Jacobs, Robert Huston, George Cronister and Anthony Deardorff.)

longer period than seven years from the decease, unless action be commenced within that period; or, if such debt be not due within seven years, unless a written statement of the debt be filed of record in the prothonotary's office within such period.

That *John Ross* died before the *6th of April,* 1805, and that no suit was brought upon the bond from *John Ross* to *Isaac* and *Abraham Boyer,* or any description of it filed in the prothonotary's office, within seven years after the death of *John Ross;* and that consequently as against a *bona fide* purchaser, which *Anthony Deardorff* was, the lien of that debt was gone before suit was brought.

And that *Anthony Deardorff* was not estopped by the pleadings and proceedings in the suit, which was brought on that bond, in 1823, from denying the existence of that lien, and controverting its effect in this action.

The errors assigned were to the charge of the court on these two points.

*Penrose* and *Stevens* for the plaintiff in error,

1st. Contended that under the will of *John Ross, James Ross* and *Sample Ross,* the executors become invested with an estate in his lands devised in trust for the uses of the will, and that the power to sell never having been executed by them, and the *entire* title never having been acquired from all the cestique trusts the entire estate had never been so vested in them as to warrant the application of the limitation of the act of 1797, which was made for the benefit of the *bona fide* purchaser. Where trustees have an estate vested in them, a purchase by them of part of the interest of cestique trust does not vest in them such an interest in the trust fund as that a sale on a judgment, obtained against them, would transfer the title clear of the trust.

Here one of the trusts of the will was the payment of the debts of the testator, of which the debt under which the plaintiff claimed was one. To have the effect contended for, the purchase by the trustee must be of the *entire* interest. In case of a partial purchase the trust remains, and the purchaser at sheriff's sale, under the judgment against the trustee, would take subject to the trust.

It is obvious that nothing less than an agreement of the parties in interest could extinguish the trust; a partial agreement could not have this effect.

Here the lapse of time did not run against the trust, and *Deardorff* comes in with full notice. He claims under a judgment against *Samuel Ross;* and one of the muniments of his title is the will of *John Ross,* which gave him notice of the trust, and which imposed upon the executors the duty of *paying the debts of the testator.* The title which *Deardorff* bought was an equitable title, and he must

(George Himes *v.* George Jacobs, Robert Huston, George Cronister and Anthony Deardorff.)

take it with all the circumstances of the equity: and a paramount incumbrancer is not defeated.

Any other doctrine would establish a rambling and licentious equity, to depend on the circumstances of each case.

The judgment against *Sample Ross*, and the sale upon it of his interest in the land devised to *Samuel Ross*, vested no title in *Samuel.*

He was a legatee under the will of *John Ross*, and took no interest in the land upon which that legacy was charged, which was the subject of a judicial sale. *Allison Ex'r of Henderson*, v. *Wilson's Ex'rs.* 13 *Serg. & Rawle*, 330.

2d. But *Deardorff* has had his day of grace, and it has gone to judgment. In the suit brought on the bond of *Boyer* and *Boyer* he appeared and made defence. In the declaration the plaintiff set forth certain facts, among them those which constituted a lien. The plaintiff in that case had a right to call in the terre-tenants, and save the expense of a subsequent investigation.

It is not competent for a party after trial and judgment, to allege that he might have put in another plea which would have answered his purpose better. If he *might* have put in the plea that is enough; he is concluded by the trial and judgment as to every fact alleged, and not denied by him. Nor does it lay in the mouth of the defendant to say, that there was no trial on the point, as to the lien of the debt, alleged by the plaintiffs in that suit. It was a matter of no importance to the terre-tenants whether the *debt* was *due* by *John Ross;* the lien of the debt on their land was the only question of interest to them. 1 *Phil. E.* 140. 243. 238.

In ejectment the irregularity of the proceedings in a *scire facias sur* mortgage, as that the judgment was entered on one *nihil*, cannot be inquired into. *Allison* v. *Rankin*, 7 *Serg. & Rawle*, 269. So in a *scire facias* against an heir and terre-tenant, what might have been pleaded is concluded by the verdict and judgment. *Coyle et als* v. *Reynold's Ex'r* 7 *Serg. & Rawle*, 328. *White* v. *Ward et al*, 9 *John. R.* 232. *Nace et al*, v. *Hollenbach*, 1 *Serg. & Rawle*, 548. *Bender* v. *Fromberger*, 4 *Dall*, 436.

The mode of proceeding adopted by the plaintiffs in the suit upon the bond was perfectly regular. They first took judgment against the defendants, the executors of *John Ross*, and then went to trial with the terre-tenants.

Such is the mode in the case of a *scire facias* on a mortgage or recognizance: judgment is taken against the cognizors or mortgagors, and then the plaintiff goes to trial as to the terretenants.

*Carothers*, for the defendants in error.

1st. *Samuel Ross* was executor, and also seized of the legal estate in the land in question, under the will of his father. The

(George Himes *v.* George Jacobs, Robert Huston, George Cronister and Anthony Deardorff.)

interest of the legatees become vested in him by purchase, and the execution of the power, under the will, was thereby dispensed with, and the devise became absolute.     *The court here told Mr. Carothers that he need not labour this point.*

2d. As to the lien of the debt to *Boyer* and *Boyer,* it was gone. The debt had stood from 1793 to 1823, and if there was a lien, as against *Samuel Ross,* it was discharged by the sheriff sale, under which *Deardorff* became the owner of the land.     *Commonwealth for the use of Guernsey* v. *Alexander,* 14 *Serg. & Rawle,* 257. *M‘Lanahan* v. *M‘Lanahan, ante. p.* 96.

It is not conceded that *Deardorff* had notice of the debt, but in *Bombay v. Boyer,* 14 *Serg. & Rawle,* 253, it was decided that express notice of a judgment does not avoid the limitation of its lien to five years.     This principle is equally applicable to the act of 1797, as to the lien of debts of decedents.

But if actual notice had been given by *Boyer,* it would not be enough, for the act of assembly requires the notice to be of *record:* and none other will suffice to preserve the lien of the debt under that act.

The lien was clearly gone, nor is there any virtue in the proceedings in the suit upon the debt to preserve it. That proceeding was an anomaly.     In Pennsylvania there is no such thing as an action of debt with a notice to the tenants of land, against which a lien is asserted.     In England the heir is not bound unless the ancestor bound him, but in Pennsylvania lands are subject to the payment of debts, and are bound in the hands of the heir, independent of any contract to that effect.     It is not in such case affected directly but collaterally.

The principles, therefore, which prevail in England on this subject, are wholly inapplicable here.     The form of action is without any precedent, and no good can result from adopting it.

The whole proceeding on this point was a *nullity,* and altogether immaterial.

A party is never concluded by an immaterial averment or issue.

An estoppel must be clearly shewn.     This record does not show it clearly.     The plea put in was "*payment,*" suppose it to have been put in by *Deardorff,* it would not admit the trial of the question of lien.     It would not in the case of a *scire facias* on a recognizance or mortgage.     In *Magauran* v. *Patterson,* 6 *Serg. & Rawle,* 278. it is said a verdict is conclusive as to the fact found, or passed upon.     Where it is a man's *duty* to plead he may be bound.     But the application of this principle to this case would be unjust.

The record of a proceeding, between landlord and tenant, is not conclusive in ejectment.     *Galbraith* v. *Black,* 4 *Serg. & Rawle,* 212. *Hess* v. *Heeble, ibid.* 246.

The action was on a bond, with a collateral condition to perform

(George Himes *v.* George Jacobs, Robert Huston, George Cronister and Anthony Deardorff.)

covenants, and a *general judgment* was confessed by one of two executors.

The amount of the damages were not ascertained, and until that was done, the terre-tenants were not bound to answer.   A jury in court, or inquest on a writ, was the proper tribunal for this inquiry. The jury then tried nothing but this preliminary issue, to which the terre-tenants, could not be parties.  *Reigart et al* v. *Ellmaker,* 6 *Serg. & Rawle,* 45–6.   *Kean* v. *Ellmaker,* 7 *Serg. & Rawle,* 1–3.

The verdict is general, and if it were between the plaintiffs and terre-tenants, it would bind them personally, which cannot be.

The plea put in was " by the defendant," and not by the *terre-tenant,* and he can in no way be affected by it.

The opinion of the court was delivered by

GIBSON, C. J.—Land being assets for payment of debts, may be seized in execution in the hands of the heir, on a judgment exclusively against the executor who has no occasion to do more than discharge himself of eventual liability in respect of the personal assets; and, therefore, nothing is more common than to pray judgment of the land after the executor has discharged himself on *plene administravit.*  Surely it would be more just to afford the terre-tenant who is the party to be affected, an opportunity to contest the debt; and it has never been supposed that the plaintiff may not do so.  Where it is doubtful whether the land has not been discharged in the hands of a purchaser, the reason for affording him an opportunity to shew the fact is not so urgent, because a judgment against the executor, being conclusive only of the existence of the debt; the question of lien may, with equal advantage, be tried in an ejectment by the sheriff's vendee.  Still, where the terre-tenant has actually appeared and had an opportunity to make a full defence, even though he may not have availed himself of it, he is concluded to every intent.  In *Heller* v. *Jones,* 4 *Bin.* 61, a younger judgment creditor who had appeared to a *scire facias* and given notice that he would insist on collusion in the concoction of the original judgment, but had afterwards taken no part at the trial, was precluded from controverting the fairness of the judgment in an ejectment by a purchaser under it: and this on the ground that he had in fact had an opportunity to try the question and neglected it.   The principle of that case is in accordance with a rule, not merely of pleading, but good sense, that whatever is not contested at the proper time is conceded.  Even had the terre-tenants here been called in prematurely, still they availed themselves of the occasion, and had as fair an opportunity to make a full defence, as if the proper time to do so had not been anticipated.   They came in to shew that the land was not debtor; and this they were competent to do, either by disproving the debt or

nullifying its lien; each of which was open to them as an available ground of defence, and there is no reason why they should be suffered to use but one and reserve the other. That is the naked point, here, as their right to do so, is evident from the proceedings in the original action. The plaintiffs brought debt on bond against the executors of the obligee, with notice to terre-tenants who had purchased from the heir, and claimed to hold the land discharged. The executors confessed judgment; but the terre-tenants went to trial on the plea of payment, and it was found against them. Now I am not going to say what may be given in evidence under that plea. The question of lien was tried or it was not. If it was tried, it will not be pretended that it ought to be tried over again; and if it *might* have been tried under a proper plea and was not, then the case is within the principle of *Heller* v. *Jones,* and the terre-tenants are concluded just as if the fact had been expressly found against them. That case, however, is by no means so strong in circumstances. There the younger judgment creditor had only given notice of an intended defence, without proceeding further; here the terre-tenants actually went to trial, and were necessarily bound to bring forward their whole defence: so that notwithstanding the lien was clearly gone, yet having missed the opportunity to shew *it,* we are of opinion they are concluded.

HUSTON, J. and SMITH, J. dissented.

Judgment reversed and *venire de novo* awarded.